## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NALENE RUFFIN<br>1407 Morse Street, NE<br>Washington, DC  20002 | ) ) ) ) | |
| IRENE JORDAN<br>143 Randolph Place, NW<br>Washington, DC  20001 | ) ) ) ) | |
| DEMETRIA HARRIS<br>1441 34th Street<br>Washington, DC  20020 | ) ) ) ) | |
| DARLENE MUNGIN<br>551 Red Coat Place<br>Fort Washington, MD  20744 | ) ) ) ) | **Case No.**   1:22-cv-2341 |
| *Plaintiffs*, | ) ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| DISTRICT OF COLUMBIA | ) ) | |
| MURIEL BOWSER, MAYOR | ) ) | |
| and | ) ) | |
| INTERIM AGENCY DIRECTOR OF THE<br>DEPARTMENT OF PUBLIC WORKS<br>MICHAEL CARTER | ) ) ) ) | |
| Serve: | ) ) | |
| MURIEL BOWSER, MAYOR<br>DISTRICT OF COLUMBIA | ) ) ) | |
| Serve: DC Attorney General<br>Karl Racine, or his designed<br>Representative<br>        400 6th Street, N.W.<br>        Washington, DC 20001 | ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

## COMPLAINT FOR DAMAGES AND
## DECLARATORY AND INJUNCTIVE RELIEF

Come now Plaintiffs, Nalene Ruffin (hereinafter "Plaintiff Ruffin"), Irene Jordan

(hereinafter "Plaintiff Jordan"), Demetria Harris (hereinafter "Plaintiff Harris"), and Darlene

Mungin (hereinafter "Plaintiff Mungin"), by and through the undersigned counsel, and file this

Complaint for Damages and Declaratory and Injunctive Relief against Defendant District of

Columbia Department of Public Works (hereinafter "DPW"), stating as follows:

## INTRODUCTION

Plaintiffs are DPW employees (current and former) who were subjected to adverse actions

and harm because of their age and gender, and because of their efforts to prohibit age and gender

discrimination and professional misconduct in DPW.  Each Employee was targeted for removal

from the overly male-dominated DPW.

1.1. Plaintiffs bring this suit alleging that they were victims of a coordinated effort by former

DPW Daniel Harrison (who is since deceased) to remove them and other middle-aged

Black women from the Department.  All of the Plaintiffs were experienced staff who

vocally opposed what they perceived to be DPW management, bias, and preferential

treatment in favor of male and younger colleagues.  The Plaintiffs further assert that

former Deputy Administrator Daniel Harrison harbored, and current Director Michael

Carter harbors ageist and sexist attitudes manifested by their own behavior.  Under the

color of law, Deputy Administrator Daniel Harrison and Director Michael Carter used

their power to discriminate, marginalize, displace, harass, and harm the Plaintiffs, based

on their constitutionally protected status of age and gender, by culling out middle-aged

Black women from DPW and by manipulating its investigative process to protect male

employees accused of misconduct.  Specific and detailed allegations against Daniel Harrison have been filed by employees from every DPW division, at a volume that placed Defendants on clear notice that there was a problem with him, yet nothing was done to protect older female workers from his relentless discrimination and bias against them.

1.2.  Plaintiffs seek money damages, reinstatement, and back pay.  They assert claims pursuant to Title VII of the Civil Rights Act of 1964, federal civil rights claims pursuant to 42 U.S.C. §§ 1981 and 1983, the Age Discrimination in Employment Act, the District of Columbia Human Rights Act, and the District of Columbia Whistleblower Protection Act, and, in the alternative, District of Columbia common-law provisions against wrongful termination, breach of covenant in good faith and negligent supervision. Plaintiffs further seek declaratory and injunctive relief ordering the DPW to cease and desist discriminating against middle-aged Black female employees and mandating that the District of Columbia Inspector General conduct a thorough and Court-supervised investigation into potential civil rights violations by DPW senior and middle managers.

## 2.  <u>PARTIES</u>

2.1. **Plaintiff Nalene Ruffin** is a District of Columbia resident and currently employed as the only female Heavy Mobile Equipment Mechanic in DPW, where for the past 5 years prior to the incident, she worked on small engine lawnmowers.  Plaintiff Ruffin obtained her education and began her career with the District of Columbia in 2003.  Plaintiff Ruffin repairs small engine equipment.  Plaintiff Ruffin works alone under dire conditions at times, with no heat in the winter, no air conditioning in the summer, and many missing tools that were not replaced after repeated requests made to management.

Over the course of her service to DPW, Ms. Ruffin has received numerous awards and commendations. On October 8, 2019, Daniel Harrison sent an email requesting Plaintiff Ruffin to repair snow blower equipment; however, Plaintiff Ruffin was not responsible for all of the snow blowers, nor was Plaintiff responsible for any of the Ventrecs, as DPW's solid waste practice was to send most of the snow blowers and all of the Ventrecs to the vendor for repair. In addition, Ms. Ruffin was on permitted sick leave on the day of that email and for a large portion of October 2019 due to her personal illness and to care for her sick mother, which was approved under the Family Medical Leave Act. On November 19, 2019, Plaintiff Ruffin was accused of failure/refusal to follow instructions and neglect of duties. When Plaintiff Ruffin returned to work, she focused on getting the snow blowers repaired as instructed. Plaintiff Ruffin coordinated the transportation of the snow blowers to the DPW/Fleet Shop and began to work on the snow blowers. Plaintiff Ruffin ordered the necessary parts and spent days getting the snow blowers repaired. It became apparent to Plaintiff Ruffin that she needed to send some of the snow blowers out for repair. Plaintiff Ruffin continued up the chain of command by informing the managers, Plaintiff Irene Jordan and Maxwell Panton, of the blowers needing vendor repair. Plaintiff Ruffin communicated with and informed her supervisors and manager of each step of the repair process, including the need to send the snow blowers out for repair. Her supervisor, Mr. Glennis Jackson approved sending them out for repair. She then called James Boxdale (SWMA Supervisor) to borrow their truck to take the snow blowers to the vendor, Kohler Equipment. Plaintiff Ruffin's shop is the only shop at DPW/Fleet that does not have transportation for out-of-shop repairs, unlike all the other shops. Ms. Ruffin delivered the snow blowers to Kohler Equipment

on the morning of November 19, 2019.  Upon arrival back to her fleet later that day, Plaintiff Ruffin received a proposed discipline letter alleging that she did not work on the snow blowers as requested by Daniel Harrison.  Ms. Ruffin has been subjected to the adverse action of being moved from one shop to the next for the sake of the supervisor, Daniel Harrison, giving her job to another male employee, and despite the fact that Ms. Ruffin has an arthritic knee that prohibits her from performing certain physical tasks.  To achieve the goal of replacing her with her the other male technician, the supervisor subjected Ms. Ruffin to continued unfounded allegations supported by falsified evidence and transferred Ms. Ruffin from a position in which she performed very well to a position that demanded excessive physical exertion on her knee.  After the employee that replaced her could not complete the task, the work remained uncompleted.  Ms. Ruffin then took time from her new assignment to send the snow blowers out for repair. Nevertheless, she was written up in December of 2019 for not having the snow blowers repaired.  Ms. Ruffin submitted a rebuttal to the write-up within 10 days.  Ms. Ruffin had to seek union representation.  The mediation held between the Agency and the union found that Ms. Ruffin was in fact doing her job properly.  All of Ms. Ruffin's supervisors (except the complaining supervisor, Daniel Harrison) advised that Plaintiff Ruffin had done her job.  While the shop that replaced Ms. Ruffin in the lawn mower shop had quickly failed at the task, the Agency moved Ms. Ruffin back to her old position due to her replacement's inability to complete the assignment.  Yet, there was no recompense for the pain and suffering she suffered on her knee during the period she was transferred to the sweeper shop where she was forced to climb up and down throughout the day.  Furthermore, there was no acknowledgment of the wrong that was

committed by discriminating against her for the sake of an unqualified male employee to take her position.  Plaintiff Ruffin filed her discrimination complaint with DCOHR within one year of the discriminatory act. (Exhibit A)

2.2. **Plaintiff Irene Jordan** is a District of Columbia resident and was unjustifiably given a low-performance rating and was marginalized from management and supervisory meetings and ultimately terminated.  Plaintiff Jordan engaged the Agency's EEOC Counselor.  The EEOC Counselor wrote that the Agency would not cooperate with her. She gave Ms. Jordan her exit letter advising that she was discriminated against based on race, age, and gender.  Ms. Jordan began working for DPW in September of 2002.  An accomplished employee, Plaintiff Jordan rose to become Director of Maintenance and Repair Manager in 2014.  In September of 2019, Daniel Harrison began excluding Plaintiff Jordan from meetings for managers and supervisors.  Later that month, Daniel Harrison gave Plaintiff Jordan a poor performance evaluation rating of 2.1, even though Mr. Harrison had only supervised Plaintiff Jordan for less than ninety (90) days.  During the same period, no male colleagues in managerial positions received a low rating of two (2).  No woman received a rating of lower than four (4) or five (5) prior to Daniel Harrison becoming the new Fleet Management Deputy Administrator.  Daniel Harrison did not place any of the female supervisors on a Performance Improvement Plan (PIP) before giving them a low rating or reprimand; whereas their male colleagues were given the benefit of a PIP and scores of 4 or 5.  On December 18, 2019, Daniel Harrison then issued a Letter of Reprimand to Plaintiff Jordan for not responding to him, something he never accused any male colleague.  After that, Ms. Jordan was marginalized and excluded from meetings that she normally would have been invited to attend.  She

engaged the Agency's EEOC Counselor.  The EEOC Counselor wrote that the Agency would not cooperate with her.  She gave Ms. Jordan her exit letter advising that she was discriminated against based on race, age, and gender.  After that, her supervisor retaliated against her, giving her a low-performance appraisal score of two (2).  Ms. Jordan did not sign the evaluation.  Then her supervisor Daniel Harrison deleted the negative evaluation and had all his sign-in dates erased.  Yet, he increased the number of times in which she was excluded from meetings.  At one meeting that she was able to attend, Daniel Harrison told everyone in the group that Ms. Jordan was putting EEOC on him.  Despite being put on notice by EEOC of the discriminatory actions, DPW and Daniel Harrison increased harassment of her and other women at DPW, including Paka Marrow who was transferred under duress because of harassment.  The women went to see Councilmembers Cheh and Silverman.  They said they would look into it, but nothing was done.  The women also met with the union president Barbara Milton (who also was at the meeting with Councilmembers Cheh and Silverman).  Nonetheless, Mr. Harrison continued to harass Ms. Jordan by assigning her more areas to cover, in addition to the areas she already had under her charge.  She had to assume the duties of a supervisor for three (3) areas.  Ms. Jordan began having panic attacks.  She started seeing a counselor.  She was prescribed anti-depression medication including Prozac, Ambilify, Lorazepam, and Trazadone.  Ms. Jordan met with a therapist once a week. She endured sleepless nights and recalls that it was a dark time.  She was the only female manager.  And they continued to exclude her from meetings.  In October 2020, Daniel Harrison placed Ms. Jordan on a Performance Improvement Plan, the duration of which changed to thirty (30) days, not enough time for improvement.  Four weeks later, Mr.

Lawrence advised that she was terminated.  To add salt to her injuries, Daniel Harrison advised that Ms. Jordan would never be able to work for D.C. Government again.  Since then, Ms. Jordan has not been able to even get an interview for a job.  She is still unemployed and suffering emotional pain and distress from the discriminatory treatment of DPW and the adverse actions of loss of income.  Plaintiff Jordan filed her discrimination complaint with DCOHR within one year of the discriminatory acts and received her Exit Letter on February 28, 2020 (Exhibit B).

2.3. **Plaintiff Demetria Harris** is a DC resident and currently employed as Special Events Coordinator.  Ms. Harris obtained her education from Virginia Union University and began her career with the District of Columbia in the Mayor's Office of Community Relations in 2007.  Ms. Harris is a graduate of the George Washington University Certified Project Manager Program and the Lean Six Sigma program of Yellow Belt. Ms. Harris was also nominated for the prestigious Cafritz Award several times and received many awards and commendations.  Ms. Harris has been subjected to being placed on three charges (two of which were overturned as being unfounded), being marginalized from meetings and promotions, subjected to the humiliation of being sent penis pictures, and being the target of sexual innuendo.  While she received the highest score for her two (2) applications for a deputy director position, not was not even selected for an interview.  She's suffered emotional distress by working in a hostile environment toward older women and has been denied the opportunity to be promoted as one form of retaliation since she filed the initial sexual harassment claim.  The first incident occurred in June of 2018 in which Ms. Harris was sent penis photos to her government email address.  She notified 10 members of leadership, and nothing was

done.  The second incident occurred in October of 2018, while Plaintiff Harris was a

conference in New Orleans, one of the male participants from the program that she

managed, Joshua Tucker, sent Plaintiff multiple emails stating he was quitting work

tomorrow.  She asked Mr. Tucker why, and he said because he wanted to sleep with her

and have sex with her on the job.  She immediately reported the sexual harassment.

Plaintiff then began to receive calls from Mr. Tucker's wife between 2:00 a.m. and 4:00

a.m. over the course of two months.  Plaintiff immediately reported these incidents as

well.  Despite Plaintiff's complaints about the harassment to her supervisors, she was

still assigned to work directly with him.  Instead of disciplining the harasser, Plaintiff

was advised to remove herself from interactions with him.  Plaintiff had to endure

continued harassment from Mr. Tucker, saying, "she ain't shit; she ain't nobody," and

"she can get bent over too."  He would ask Plaintiff, "when we getting together?"

DCHR finally terminated Mr. Tucker.  However, DPW never investigated or

acknowledged Plaintiff's complaints.  Then on May 2, 2019, Plaintiff received

photographs of someone's penis via text message from a phone number she did not

know.  Plaintiff showed them to her supervisor Daniel Harrison, who advised that he did

not want to see them and that he would get back to her.  Nothing was ever done.

Although Plaintiff Harris requested that her government-issued cell phone number and

email address be changed to stop the harassment, DPW never did so.  In addition to the

sexual harassment, Plaintiff Harris was not allowed to attend Leadership team meetings.

In fact, Daniel Harris did not allow any woman over 50 to attend Leadership team

meetings.  Not being able to attend the Leadership meetings as she had prior to Daniel

Harrison's arrival, decreased Plaintiff's role within DPW as she was no longer allowed

to contribute to DPW's planning and decision-making.  After notifying DPW in October of 2018 and May of 2019 of the incidents with Mr. Tucker, the fact that her merit raise had been signed but not processed, all workforce development programs, procurement, contract management, and administrative responsibilities which had been in Plaintiff's work portfolio, were removed.  During COVID protocols, Ms. Harris was directed to remove masks and gloves and forced to move parking locations, despite documented safety concerns.  Plaintiff is routinely left out of work related to special and seasonable events, which is a core component of her job description.  Plaintiff received a low-performance review for FY19, despite never having received a low-performance rating in the past.  On January 14, 2020, Plaintiff applied for the Deputy Associate Administrator position and received the highest application rating.  Although having the requisite experience and education, Plaintiff was not even selected for an interview.  Plaintiff Harris filed her discrimination complaint with DCOHR within one year of the discriminatory acts and received her Exit Letter on December 24, 2020.  (Exhibit C)

2.4. **Plaintiff Darlene Mungin** began working for DC Government in 2004.  She has a long-standing exceptional performance record and has received numerous commendations over the years for being an outstanding manager.  Plaintiff Mungin's education includes the Mayor's Executive Leadership Program from George Washington University (the subject of this complaint); Certified Public Manager, Lean Six Sigma Greenbelt, Excellence in Municipal Government Management, Contract Administrator, Contract Officer Technical Representative, and Federal Government Contracting from George Washington University.  Plaintiff Mungin earned her Bachelor of Science in Computer Science from New York University.  Plaintiff Mungin is the recipient of awards from the

following organizations:  DC Hometown Mentor; Lean Six Sigma, Greenbelt; Federal

Contracting; Program for Excellence in Municipal Administration, National Forum for

Black Public Administrators, Public Leadership, VA Non-Profit Organization, National

Area Fleet Administrators, American Public Works Association, Business and

Professional Women, Who's Who, Financial Management and Gifted Leadership, Most

Valuable Team Leaders (2 years); and the Prestigious Leadership (2 years).  However,

on February 14, 2020, the Agency terminated Plaintiff Mungin from the position of Fleet

Advisory Service Manager from DPW.  The Agency alleged insubordination claiming

that Plaintiff Mungin enrolled in the Mayor's Leadership class without permission.

Plaintiff emphatically demonstrated and asserted that she indeed had approval from the

Fleet Management Administrator, Brian Lawrence, the Interim Deputy Administrator for

Business, Ryan Frasier, *and* the Deputy Director of DPW, Michael Carter.  In fact,

Plaintiff Mungin's supervisor, Brian Lawrence, specifically instructed Ms. Mungin to

accept her admission into the Mayor's Executive Leadership Program, for classes that

begin in October of 2019.  Management was fully aware of her attendance at the ELP

Classes, which continued into November and December of 2019.  It was not until

January 30, 2020, that Mr. Lawrence advised Ms. Mungin that she could no longer

participate in the program.  Plaintiff Mungin immediately withdrew from the ELP to

comply with Mr. Lawrence's order.  Plaintiff Mungin reported the discrimination to

DCOHR within one year of the discriminatory acts and received her Exit Letter on

March 9, 2020.  (Exhibit D)

**2.5.** **Defendant District of Columbia** is a municipality governed by Mayor Muriel Bowser and the DC City Council.  DC DPW is headed by Interim Director Michael Carter, who has been employed by the agency for more than twenty (20) years.

### 3.   JURISDICTION AND VENUE

**3.1.** This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as it asserts claims that arise under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* ('Title VII"),  the Civil Rights Act of 1866, 42 U.S.C. § 1981(a), 42 U.S.C. 1981, by way and through 42 U.S.C. § 1983 and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634.

**3.2.** This Court also has pendant jurisdiction over Plaintiffs' state law claims pursuant to the District of Columbia Human Rights Act, District of Columbia Code § 2-1401.01 *et seq.*, the District of Columbia Whistleblower Protection Act, District of Columbia Code § 1-615-51, *et seq.,* and tort claims against the District of Columbia for negligent supervision and, in the alternative, breach of covenant in good faith and wrongful termination.

**3.3.** Venue is proper in the District of Columbia under 28 U.S.C. § 1331 and 29 U.S.C. § 1402 because substantially all the acts and omissions that give rise to this complaint occurred in the District of Columbia.  Venue properly lies within this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).  This Court is also the proper venue to adjudicate Plaintiffs' pendant state law claims.

4.  **FACTS RELEVANT TO ALL PLAINTIFFS**

  **4.1.** DPW'S CENTRALIZED TOP-DOWN MALE POWER HIERARCHY

    **4.1.1.**   The DPW has repeatedly been criticized and sued for discriminatory management, harassment, and overall poor management.  While each level of leadership in the hierarchy is granted some authority over day-to-day activities or routine repairs and work, the ultimate decision-maker on all DPW matters is the Director.

    **4.1.2.**   The Director maintains a degree of supervision over the Department's various managers and its Equal Employment Office, and accessibility to all DPW employees who are able to speak directly to him or her upon request and appointment.

    **4.1.3.**   Most non-management employees at DPW are classified as at-will, union, and career-service, with management outside of union classified as Management Supervisory Service.

    **4.1.4.**   The DPW maintains one centralized EEO office for all personnel. This is the office that handles all internal complaints regarding unfair or discriminatory treatment.  In theory, it is supposed to investigate, mediate, and address equal opportunity concerns.

    **4.1.5.**   The DPW also maintains a Sexual Harassment Officer, who has not provided any substantive assistance to the Plaintiffs.

    **4.1.6.**   All bargaining unit members are subject to the same pay, promotion, assignment, and disciplinary procedures as negotiated by the Union and outlined in the Collective Bargaining Agreement.

**4.2.** THE ROLE OF THE EEO DEPARTMENT

**4.2.1.**   The then and current Director of the EEOC Office, was Gail Heath (hereinafter "Ms. Heath").

**4.2.2.**   During Ms. Heath's tenure as DPW's EEO Director, she, Daniel Harrison, Michael Carter, and Christopher Geldart maintained a system that intentionally discredits older Black female complainants, effectuates a pattern and practice of retaliation, and bullies subordinates into disavowing any and all claims of discrimination filed by Black female employees, thereby resulting in the Defendant's sanctioning of discriminatory practices against them.

**4.2.3.**   Because of the dysfunctional and retaliatory nature of the DPW EEO Office, older Black women members are left with little recourse but to seek assistance from external entities, DCOHR, the EEOC, and the DC IG office.  But, as soon as they do so, they become victims of systemic and coordinated retaliatory efforts to bully, harass, force them out of, and marginalize them from their employment and promotion opportunities.

**4.2.4.**   DPW executive management, including Christopher Geldart, Chris Shorter, and Christine Davis, has received numerous complaints about Daniel Harrison and Michael Carter and has refused to take any action to mitigate their obvious, and systemic pattern of EEO abuses.

**4.2.5.**   All Plaintiffs raised internal complaints and concerns about the way they were being treated by Michael Carter, Brian Lawrence, Daniel Harrison, and Christopher Geldart.

## 5.  PLAINTIFF NALINE RUFFIN'S CLAIMS

### 5.1. Violation of Title VII

**5.1.1.**   Plaintiff Ruffin references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**5.1.2.**   Over the course of her tenure in DPW, Plaintiff Ruffin observed, and asserts herein, that older female employees are subjected to more frequent and more harsh discipline than their male counterparts for the same offenses.

**5.1.3.**   Plaintiff Ruffin asserts, on information and belief, that female employees are subject to harsher discipline to a statistically significant degree, and that robust discovery on this issue will prove it.

**5.1.4.**   Plaintiff Ruffin asserts that this disparity substantially increased during the tenure of Daniel Harrison, Michael Carter, and Christopher Geldart.

**5.1.5.**   Plaintiff Ruffin asserts that Daniel Harrison used his power and office to protect male employees he favors who get into trouble for misconduct, by inserting himself into the disciplinary process to mitigate or bypass discipline for them.

**5.1.6.**   Plaintiff Ruffin asserts that she was systematically targeted for harassment, unfair treatment, disparate treatment, bullied, and inaccurately evaluated because of her gender and age, and in furtherance of Daniel Harrison's scheme to remove older Black women from DPW.

**5.1.7.**   Plaintiff Ruffin asserts that Daniel Harris tried to write her up and put her on a Performance Improvement Plan for false and inaccurate reasons, which caused her severe stress and mental anguish.

**5.1.8.** Plaintiff Ruffin asserts that this effort to attack her credibility, disparage her work, and put her employment in jeopardy was motivated by gender animus because she is an older female.

**5.1.9.** Plaintiff Ruffin asserts that Daniel Harrison, Michael Carter, and her superiors singled her out for physically demanding assignments they knew Plaintiff could not perform due to arthritis.

**5.1.10.** Plaintiff Ruffin asserts that Daniel Harrison fostered and encouraged a workplace that was rife with sexist, ageist, and off-color comments and jokes, that in the aggregate created a hostile work environment for older female workers.

**5.1.11.** When Plaintiff Ruffin attempted to speak to her superiors about the hostile work environment she was enduring, and her concerns about gender disparities in the frequency and severity of discipline of male employees as compared to female employees, she was rebuffed, ignored, dismissed, and retaliated against.

**5.1.12.** Plaintiff Ruffin asserts that once she attempted to file an EEO complaint about the hostile work environment she was enduring, she became the target of a coordinated effort to push her out of DPW that was orchestrated and directed by Daniel Harrison.

**5.1.13.** Plaintiff Ruffin asserts that Daniel Harrison and DPW went to mediation with the union and that evidence showed that she was doing her job.

**5.1.14.** Plaintiff Ruffin was falsely accused of non-performance and reprimanded.

**5.1.15.** Plaintiff Ruffin asserts that the cumulative effect of the harassment, the hostile work environment, and the retaliation that she endured at DPW caused her to suffer severe mental stress and anxiety, emotional suffering, and damage to her reputation.

**5.1.16.**   Plaintiff Ruffin asserts that she was unfairly targeted for harassment for the express purpose of moving her out of DPW because Daniel Harrison harbored animus towards older Black female employees.

**5.1.17.**   Plaintiff Ruffin now seeks compensatory damages, as well as damages for her emotional and mental anguish, and damage to her reputation of not less than $350,000, and all other remedies, including the right to reinstatement to DPW, as the Court deems appropriate to make her whole.

## 5.2. Violation of the DCHRA (Gender Discrimination)

**5.2.1.**   Plaintiff Ruffin references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**5.2.2.**   Plaintiff Ruffin reasserts all legal and factual predicates for her gender discrimination claim under Title VII as if fully restated herein.

**5.2.3.**   Plaintiff Ruffin asserts that she was the victim and target of a scheme to move her out of DPW based on her age and gender, in violation of the DCHRA, and as a direct and proximate cause of the hostile work environment and retaliation she endured, she has suffered severe mental anguish and emotional stress.

**5.2.4.**   Plaintiff Ruffin now seeks compensatory damages, as well as damages for her emotional and mental anguish, and damage to her reputation of not less than $350,000, and all other remedies, including the right to reinstatement to DPW, as the Court deems appropriate to make her whole.

## 5.3. Violation of 42 U.S.C. Section 1981, Enforced by Section 1983

**5.3.1.**   Plaintiff Ruffin references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**5.3.2.**   Plaintiff Ruffin reasserts all legal and factual predicates for her gender and age discrimination claim under Title VII as if fully restated herein.

**5.3.3.**   Plaintiff Ruffin further asserts that Daniel Harrison's open hostility to older Black female employees encumbered her ability to maintain and enjoy fair employment, and unlawfully forced her out of DPW.

**5.3.4.**   Plaintiff Ruffin asserts that the hostile work environment and retaliation she endured in DPW were endemic of age and gender discrimination in violation of 42 U.S.C. § 1981, and as a direct and proximate cause of such discrimination, she has suffered damage to her reputation, and severe mental anguish and emotional stress.

**5.3.5.**   Plaintiff Ruffin seeks to enforce her rights under 42 U.S.C. § 1981, by asserting the instant claim under 42 U.S.C. § 1983.

**5.3.6.**   Plaintiff Ruffin now seeks compensatory damages, as well as damages for her emotional and mental anguish, and damage to her reputation of not less than $350,000, and all other remedies, including the right to reinstatement to DPW, as the Court deems appropriate to make her whole.

**5.4. Violation of the ADEA (Age Discrimination)**

**5.4.1.**   Plaintiff Ruffin references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**5.4.2.**   Plaintiff Ruffin asserts that Daniel Harrison harbored a peculiar and particular animus toward older female workers and that he made his dislike of older workers known as soon as he took over the division in which she worked.

**5.4.3.**   On information and belief, the median age of DPW employees has dropped from 2018, when Daniel Harrison took over by approximately fifteen (15) years.

**5.4.4.**   Plaintiff Ruffin asserts that she was targeted for removal from DPW in part because of her age, and in furtherance of Daniel Harrison's scheme to remove older Agents from DPW.

**5.4.5.**   Plaintiff Ruffin asserts that when Daniel Harrison marginalized her and denigrated her based on age, her complaints about it were ignored and dismissed, and the records related to the incident were destroyed, in contravention of DPW policy.

**5.4.6.**   Plaintiff Ruffin asserts that she was singled out to be reprimanded as part of a scheme to move her out of DPW, in part because of her age.

**5.4.7.**   Plaintiff Ruffin asserts that there was no legitimate business reason to move her out of the Department because it was understaffed at the time and that the coordinated scheme to do so was motivated in part by her age.

**5.4.8.**   Plaintiff Ruffin asserts that Daniel Harrison moved her out of DPW because she was an experienced and confident older female employee whom he did not want to be in a position to challenge or oppose his actions.

**5.4.9.**   Plaintiff Ruffin asserts that the way she was treated constitutes age discrimination in violation of the ADEA, and as a direct and proximate cause of the discrimination, hostile work environment, and retaliation she endured, she suffered severe mental anguish and emotional stress, and damage to her character and reputation.

**5.4.10.**  Plaintiff Ruffin now seeks compensatory damages, as well as damages for her emotional and mental anguish, and damage to her reputation of not less than $350,000, and all other remedies, including the right to reinstatement to DPW, as the Court deems appropriate to make her whole.

### 5.5. Violation of the DCHRA (Age Discrimination)

**5.5.1.**   Plaintiff Ruffin references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**5.5.2.**   Plaintiff Ruffin reasserts all legal and factual predicates for her age discrimination claim under the ADEA as if fully restated herein.

**5.5.3.**   Plaintiff Ruffin asserts that the way she was treated constitutes age discrimination in violation of the DCHRA, and as a direct and proximate cause of the discrimination, hostile work environment, and retaliation she endured, she suffered severe mental anguish and emotional stress, and damage to her character and reputation.

**5.5.4.**   Plaintiff Ruffin now seeks compensatory damages, as well as damages for her emotional and mental anguish, and damage to her reputation of not less than $350,000, and all other remedies, including the right to reinstatement to DPW, as the Court deems appropriate to make her whole.

### 5.6. Violation of DCWPA (Whistleblower Claim)

**5.6.1.**   Plaintiff Ruffin references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**5.6.2.**   Plaintiff Ruffin engaged in protected activity when she reported race and gender discrimination, hostile work environment, and favoritism towards male employees.

**5.6.3.**   Plaintiff Ruffin was targeted for retaliation by Daniel Harrison and his subordinates because she engaged in protected activity.

**5.6.4.**   The retaliation Plaintiff Ruffin endured is outlined in the previous paragraphs and is fully incorporated herein.

**5.6.5.**   Plaintiff Ruffin asserts that she was targeted for discrimination and retaliation in part because she was speaking out about the favoritism and improper actions of Daniel Harrison, who was inserting himself into cases to protect male employees.

**5.6.6.**   Plaintiff Ruffin asserts that Daniel Harrison's scheme to remove her from DPW was an unvarnished violation of the DCWPA, and as a direct and proximate cause of it, she has suffered severe mental anguish and emotional stress, and substantial damage to her character and reputation.

**5.6.7.**   Plaintiff Ruffin now seeks compensatory damages, as well as damages for her emotional and mental anguish, and damage to her reputation, and all other remedies, including the right to reinstatement to DPW, as the Court deems appropriate to make her whole.

**5.7. Negligent Supervision – Common Law Claim**

**5.7.1.**   Plaintiff Ruffin references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**5.7.2.**   On information and belief, numerous complaints against Daniel Harrison have been filed by older Black female employees since his reign over older black women.

**5.7.3.**   Older black female employees have complained about Daniel Harrison for being both ageist and sexist, and for favoritism to male employees, both internally and to the DC Office of Human Rights, the EEOC, the Mayor's Office and the DC City Council.

**5.7.4.**   Specific and detailed allegations against Daniel Harrison have been filed by officers from every DPW division, at a volume that placed Defendants on clear notice that there was a problem with him.

**5.7.5.**   On information and belief, several complaints against Daniel Harrison have been filed with the District of Columbia Office of the Inspector General.  To date, the OIG has taken no action on any of these claims.

**5.7.6.**   The DPW and Mayor Bowser owe a duty of care to all DPW officers and employees to ensure that they can maintain their employment free from discrimination or retaliation contrary to public policy.

**5.7.7.**   The DPW and Mayor Bowser violated their duty to Plaintiff Ruffin by willfully ignoring the voluminous and diverse complaints against Daniel Harrison allowing him to remain in his position.

**5.7.8.**   Plaintiff Ruffin has been directly harmed by the actions of Daniel Harrison in targeting her for removal, in violation of both federal and DC law, and thus has been directly harmed by the negligence of the DPW and Mayor Bowser, in not carefully and properly supervising Daniel Harrison.

**5.7.9.**   The harm that Plaintiff Ruffin has suffered as a result of Daniel Harrison's action was easily foreseeable because the DPW Director and Mayor Bowser were placed on notice of the risk that Daniel Harrison posed to the DPW and to the employees under his control.

**5.7.10.**   The harm that Plaintiff Ruffin suffered was of the kind and nature that was predictable, and closely related to the other claims made against Daniel Harrison in the past.

**5.7.11.**   As a direct and proximate cause of the negligence of the DPW and Mayor Bowser supervising Daniel Harrison, Plaintiff Ruffin has suffered severe mental and emotional stress, and substantial damage to her character and reputation.  She now

seeks compensation in an amount deemed appropriate by the Court, as well as reinstatement to her previous position, and all other remedies the Court deems appropriate to make her whole.

## 6.  PLAINTIFF IRENE JORDAN'S CLAIMS

### 6.1. Violation of Title VII

**6.1.1.**   Plaintiff Jordan references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**6.1.2.**   Over the course of her twelve 12-year tenure at DPW, Plaintiff Jordan has observed and asserts herein that older Black female employees at DPW are subjected to more frequent and harsher discipline for the same offenses than their male counterparts and that fewer women are in leadership positions, as all have been terminated.

**6.1.3.**   Upon information and belief, that older female employees are subject to harsher discipline to a statistically significant degree, and that robust discovery on this issue will prove it.

**6.1.4.**   This disparity substantially increased during the tenure of Daniel Harrison, Michael Carter, and Christopher Geldart, who were far more active in inserting themselves into investigations of older females, than their predecessors.

**6.1.5.**   Daniel Harrison used his power and office to protect and help male employees he favored and to retaliate against female employees.

**6.1.6.**   In addition to his favoritism towards male employees, Daniel Harrison harbored gendered animus against older Black women, and actively and systematically removed Black women from the Department.

**6.1.7.**   Plaintiff Jordan was given a false and inaccurate performance evaluation by Daniel Harrison and Michael Carter because of her gender and in furtherance of their scheme to remove Black female employees from DPW/FMA.

**6.1.8.**   Michael Carter's assessment of her work product was false, in total contrast with his assessment of her work in previous years, without basis in fact, and intentionally designed to place her employment in jeopardy.

**6.1.9.**   Daniel Harrison's reaction to Plaintiff Jordan's objections was disparate and harsher than his reaction to absences from work of male employees.

**6.1.10.**   Daniel Harrison singled her out for unfeasible assignments, and other unpleasant and/or onerous tasks because of her gender.

**6.1.11.**   Plaintiff Jordan's vast amount of experience in DPW makes her marginalization illogical, and likely the result of unlawful gender and age animus.

**6.1.12.**   Plaintiff Jordan asserts that Daniel Harrison subjected her to adverse actions because she was an experienced and confident Black female employee who encouraged objective and impartial, gender neutral investigations and opposed favoritism towards male employees at DPW.

**6.1.13.**   Plaintiff Jordan asserts that the adverse actions she was subjected to unvarnished acts of gender and age discrimination in violation of Title VII; as a direct and proximate cause of the harassment she endures, she has suffered lost wages, lost benefits, damage to her reputation, mental anguish, and emotional stress.

**6.1.14.**   Plaintiff Jordan asks this Court to award her compensatory and equitable damages, front pay, back pay, interest, cost and fees, and attorney's fees of not less than $350,000.00. She also asks this Court for declaratory judgment ordering merit

pay for her job at DPW, and all other remedies the Court deems appropriate to make her whole.

**6.2. Violation of the DCHRA (Gender Discrimination)**

    **6.2.1.**   Plaintiff Jordan references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

    **6.2.2.**   Plaintiff Jordan reasserts all legal and factual predicates for her gender discrimination claim under Title VII as if fully restated herein.

    **6.2.3.**   Plaintiff Jordan asserts that her write-up was an unvarnished act of gender discrimination in violation of the DCHRA, and as a direct and proximate cause of her removal of duties, she has suffered lost wages, lost benefits, damage to her reputation, mental anguish, and emotional stress.

    **6.2.4.**   Plaintiff Jordan asks this Court to award her compensatory and equitable damages, front pay, back pay, interest, cost and fees, and attorney's fees of not less than $250,000.  She also asks this Court for declaratory judgment order that she receive an equitable merit increase and all other remedies the Court deems appropriate to make her whole.

**6.3. Violation of 42 U.S.C. Section 1981, Enforced by Section 1983**

    **6.3.1.**   Plaintiff Jordan references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

    **6.3.2.**   Plaintiff Jordan reasserts all legal and factual predicates for her gender and age discrimination claim under Title VII as if fully restated herein.

    **6.3.3.**   Daniel Harrison's open hostility toward older Black female employees encumbered her ability to make and enforce an employment contract, and that his

discrimination against her employment due to her gender breached the terms of that contract.

**6.3.4.**   Plaintiff's marginalization was an unvarnished act of gender and age discrimination in violation of 42 U.S.C. § 1981, and as a direct and proximate cause of her termination, she has suffered lost wages, lost benefits, damage to her reputation, mental anguish, and emotional stress.

**6.3.5.**   Plaintiff Jordan seeks to enforce her rights under 42 U.S.C. § 1981, by asserting the instant claim under 42 U.S.C. § 1983.

**6.3.6.**   Plaintiff Jordan asks this Court to award her compensatory and equitable damages, front pay, back pay, interest, cost and fees, and attorney's fees of not less than $500,000.00.  She also asks this Court for a declaratory judgment reinstating her to her job, and all other remedies the Court deems appropriate to make her whole.

### 6.4. Violation of the ADEA (Age Discrimination)

**6.4.1.**   Plaintiff Jordan references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**6.4.2.**   Plaintiff Jordan is a Black female over the age of forty (40).

**6.4.3.**   Plaintiff Jordan asserts that Daniel Harrison harbored a peculiar and particular animus towards older workers, and that he has made his dislike of older workers in general, and black female older workers in particular, known as soon as he took over DPW.

**6.4.4.**   On information and belief, the average age of employees in DPW has dropped materially, since when Daniel Harrison took over to now.

**6.4.5.**   Plaintiff Jordan asserts that EEO Counselor Gail Heath also harbored animus towards older workers at DPW, and that Ms. Heath and Mr. Daniel Harrison worked together to attack, harm, discredit and remove older workers from DPW.

**6.4.6.**   Plaintiff Jordan asserts that she was given a false and inaccurate performance evaluation by Daniel Harrison because of her age, and in furtherance of his scheme to remove older female employees from DPW.

**6.4.7.**   Plaintiff Jordan asserts that Mike Carter's and Daniel Harrison's assessment of her work product was false, in total contrast with his assessment of her work in previous years, without basis in fact, and intentionally designed to place her employment in jeopardy.

**6.4.8.**   Plaintiff Jordan asserts that Daniel Harrison singled her out for undesirable assignments, and other unpleasant and/or onerous tasks because of her age.

**6.4.9.**   Plaintiff Jordan asserts that despite receiving an unfair performance evaluation, a three (3) rating was still considered normal and acceptable performance and does not arise to a basis for demotion.

**6.4.10.**   Plaintiff Jordan asserts that there was no legitimate business reason to remove her duties, given that DPW was understaffed at the time, and several employees were so overworked they voluntarily quit the Department.

**6.4.11.**   Plaintiff Jordan asserts that her vast experience in special events, and long tenure with DPW makes her the marginalization illogical, and likely the result of unlawful age discrimination.

**6.4.12.** Plaintiff Jordan asserts that Daniel Harrison jeopardized her employment because she was an experienced and confident employee who would challenge and oppose his actions.

**6.4.13.** Plaintiff Jordan asserts that the removal of her duties and disciplinary actions were an unvarnished act of age discrimination in violation of the ADEA, and as a direct and proximate cause of her demotion, she has suffered lost wages, lost benefits, damage to her reputation, mental anguish, and emotional stress.

**6.4.14.** Plaintiff Jordan asks this Court to award her compensatory and equitable damages, front pay, back pay, interest, cost and fees, and attorney's fees of not less than $500,000. She also asks this Court for declaratory judgment ordering an equitable merit increase, and all other remedies the Court deems appropriate to make her whole.

## 6.5. Violation of the DCHRA (Age Discrimination)

**6.5.1.** Plaintiff Jordan references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**6.5.2.** Plaintiff Jordan reasserts all legal and factual predicates for her age discrimination claim under the ADEA as if fully restated herein.

**6.5.3.** Plaintiff Jordan asserts that the reprimand and termination of duties were an unvarnished act of age discrimination in violation of the DCHRA, and as a direct and proximate cause of her demotion, she has suffered lost wages, lost benefits, damage to her reputation, mental anguish, and emotional stress.

**6.5.4.** Plaintiff Jordan asks this Court to award her compensatory and equitable damages, front pay, back pay, interest, cost and fees, and attorney's fees of not less

than $500,000. She also asks this Court for declaratory judgment reinstating her to her job, and all other remedies the Court deems appropriate to make her whole.

## 6.6. Violation of DCWPA (Whistleblower Claim)

**6.6.1.**   Plaintiff Jordan references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**6.6.2.**   As an employee, Plaintiff Jordan was aware of allegations of misconduct, sexual assaults, and other criminal activity by employees.

**6.6.3.**   Shortly after, Plaintiff Jordan was denied promotional and training opportunities.

**6.6.4.**   Plaintiff Jordan asserts that Daniel Harrison inserted himself into the disciplinary process to protect the male employees, and that the Director of DPW approved of Daniel Harrison's actions.

**6.6.5.**   Plaintiff asserts that the adverse actions to which she was wrongfully subjected were a violation of the DCWPA, designed to silence her.

**6.6.6.**   Plaintiff Jordan asserts that the reprimand and removal of duties were an unvarnished violation of the DCWPA, and as a direct and proximate cause of her termination, she has suffered lost wages, lost benefits, damage to her reputation, mental anguish, and emotional stress.

**6.6.7.**   Plaintiff Jordan asks this Court to award her compensatory and equitable damages, front pay, back pay, interest, cost and fees, and attorney's fees of not less than $500,000. She also asks this Court for declaratory judgment reinstating her to her job, and all other remedies the Court deems appropriate to make her whole

.

**6.7. Wrongful Termination in Violation of Public Policy (Pled in the alternative.)**

    **6.7.1.**   Plaintiff Jordan asserts that her termination was in violation of public policy, and as a direct and proximate cause of her termination, she has suffered lost wages, lost benefits, damage to her reputation, mental anguish and emotional distress.

    **6.7.2.**   Plaintiff Jordan asks this Court to award her compensatory and equitable damages, front pay, back pay, interest, cost and fees and attorney's fees of not less than $500,000.00.  She also asks this Court for declaratory judgment reinstating her to her job, and all other remedies this Court deems appropriate to make her whole.

**6.8. Negligent Supervision**

    **6.8.1.**   Plaintiff Jordan references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

    **6.8.2.**   On information and belief, numerous complaints against Daniel Harrison and DPW have been filed by Black female employees since his reign over older black women.

    **6.8.3.**   Black female employees have complained about Daniel Harrison and Michael Carter for being both sexist and ageist, and for favoritism to male employees, both internally and to the DC Office of Human Rights, the EEOC, the Mayor's Office and the DC City Council.

    **6.8.4.**   Specific and detailed allegations against Daniel Harrison have been filed by employees from every DPW division at a volume that placed Defendants on clear notice that there was a problem with him.

**6.8.5.**   On information and belief, several complaints against DPW have been filed with the District of Columbia Office of the Inspector General.  To date, the OIG has taken no action on any of these complaints.

**6.8.6.**   On information and belief, several members of the DPW chain of command have raised concerns about Daniel Harrison.  None of these concerns have been taken seriously or addressed.

**6.8.7.**   The Agency Director and Mayor Bowser owe a duty of care to all DPW employees to ensure that they can maintain their employment free from discrimination or retaliation contrary to public policy.

**6.8.8.**   The Agency Director and Mayor Bowser violated their duty to Plaintiff Jordan by willfully ignoring the voluminous and diverse complaints against Daniel Harrison and Michael Carter and allowing him to remain in their positions.

**6.8.9.**   The then Agency Director, Christopher Geldart and Mayor Bowser violated their duty to Plaintiff Jordan by refusing to take seriously her and other's allegations against Daniel Harrison pertinent to his protection of an employee credibly accused of serious misconduct.

**6.8.10.**   Plaintiff Jordan was directly harmed by the marginalization of her employment, promotion, and training opportunities, in violation of both federal and DC law and directly harmed by the negligence of the Agency Director and Mayor Bowser in their failure to more carefully and properly supervise Daniel Harrison.

**6.8.11.**   Because the Agency Director and Mayor Bowser were placed on notice of the risk that Daniel Harrison posed to DPW and to the employees under his control, they could reasonably foresee the harm Daniel Harrison caused to Plaintiff.

**6.8.12.**   The harm that Plaintiff Jordan suffered was predictable, and closely related to the other claims made against Daniel Harrison and Michael Carter in the past.

**6.8.13.**   As a direct and proximate cause of the negligence of the Agency Director and Mayor Bower in supervising Daniel Harrison, Plaintiff suffered lost wages and benefits, damage to her reputation, and severe mental and emotional stress.  She now seeks compensation in an amount deemed appropriate by the Court, as well as training and promotional opportunities, and all other remedies the Court deems appropriate to make her whole.

## 7.   **PLAINTIFF DEMETRIA HARRIS' CLAIMS**

### 7.1. **Violation of Title VII**

**7.1.1.**   Plaintiff Harris references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**7.1.2.**   Over the course of her twelve-year tenure at DPW, Plaintiff Harris has observed and asserts herein that older Black female employees at DPW are subjected to more frequent and harsher discipline for the same offenses than their male counterparts.

**7.1.3.**   Upon information and belief, that older female employees are subject to harsher discipline to a statistically significant degree, and that robust discovery on this issue will prove it.

**7.1.4.**   This disparity substantially increased during the tenure of Daniel Harrison, Michael Carter, and Christopher Geldart, who were far more active in inserting himself into Agent investigations than their predecessors.

**7.1.5.**   Daniel Harrison used his power and office to protect and help male employees he favored and to retaliate against female employees.

**7.1.6.** In addition to his favoritism towards male employees, Daniel Harrison harbored gender animus against older Black women, and he actively and systematically removed Black women from the Department.

**7.1.7.** Plaintiff Harris was given a false and inaccurate performance evaluation by Daniel Harrison and Michael Carter because of her gender and in furtherance of their scheme to remove Black female employees from DPW.

**7.1.8.** Michael Carter's assessment of Plaintiff Harris's work product was false, in total contrast with his assessment of her work in previous years, without basis in fact, and intentionally designed to place her employment in jeopardy.

**7.1.9.** Daniel Harrison's reaction to Plaintiff Harris's objections was disparate from and harsher than his reaction to absences from work by male employees.

**7.1.10.** Daniel Harrison singled Plaintiff Harris out for unfeasible assignments, and other unpleasant and/or onerous tasks because of her gender.

**7.1.11.** Despite being subject to two (2) unfounded charges (both of them were overturned), Ms. Harris received a two (2) rating was still considered a "poor employee" with acceptable performance.

**7.1.12.** Plaintiff Harris' vast amount of experience in DPW makes her marginalization illogical, and likely the result of unlawful gender and age animus.

**7.1.13.** Plaintiff Harris asserts that Daniel Harrison subjected her to adverse actions because she was an experienced and confident Black female employee who encouraged objective, impartial, and gender-neutral investigations and who opposed favoritism towards male employees at DPW.

**7.1.14.**  Plaintiff Harris asserts that the adverse actions she was subjected to were unvarnished acts of gender and age discrimination in violation of Title VII; as a direct and proximate cause of the harassment she endures, she has suffered lost wages, lost benefits, damage to her reputation, mental anguish, and emotional stress.

**7.1.15.**  Plaintiff Harris asks this Court to award her compensatory and equitable damages, front pay, back pay, interest, cost and fees, and attorney's fees of not less than $350,000.00. She also asks this Court for declaratory judgment ordering an equitable merit pay increase for her job as a Special Events Coordinator at DPW, and all other remedies the Court deems appropriate to make her whole.

## 7.2. Violation of the DCHRA (Gender Discrimination)

**7.2.1.**  Plaintiff Harris references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**7.2.2.**  Plaintiff Harris reasserts all legal and factual predicates for her gender discrimination claim under Title VII as if fully restated herein.

**7.2.3.**  Plaintiff Harris asserts that her write-up was an unvarnished act of gender discrimination in violation of the DCHRA, and as a direct and proximate cause of her removal of duties, she has suffered lost wages, lost benefits, damage to her reputation, mental anguish, and emotional stress.

**7.2.4.**  Plaintiff Harris asks this Court to award her compensatory and equitable damages, front pay, back pay, interest, cost and fees, and attorney's fees of not less than $250,000. She also asks this Court for declaratory judgment order that she receive an equitable merit increase, and all other remedies the Court deems appropriate to make her whole.

**7.3. Violation of 42 U.S.C. Section 1981, Enforced by Section 1983**

**7.3.1.**   Plaintiff Harris references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**7.3.2.**   Plaintiff Harris reasserts all legal and factual predicates for her gender and age discrimination claim under Title VII as if fully restated herein.

**7.3.3.**   Daniel Harrison's open hostility toward older Black female employees encumbered her ability to make and enforce an employment contract, and that his discrimination against her employment due to her gender breached the terms of that contract.

**7.3.4.**   Plaintiff's marginalization were unvarnished acts of gender and age discrimination in violation of 42 U.S.C. § 1981, and as a direct and proximate cause of her termination, she has suffered lost wages, lost benefits, damage to her reputation, mental anguish, and emotional stress.

**7.3.5.**   Plaintiff Harris seeks to enforce her rights under 42 U.S.C. § 1981, by asserting the instant claim under 42 U.S.C. § 1983.

**7.3.6.**   Plaintiff Harris asks this Court to award her compensatory and equitable damages, front pay, back pay, interest, cost and fees, and attorney's fees of not less than $500,000.00.  She also asks this Court for a declaratory judgment reinstating her to her job, and all other remedies the Court deems appropriate to make her whole.

**7.4. Violation of the ADEA (Age Discrimination)**

**7.4.1.**   Plaintiff Harris references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**7.4.2.**   Plaintiff Harris is a Black female over the age of forty (40).

**7.4.3.** Plaintiff Harris asserts that Daniel Harrison harbored a peculiar and particular animus towards older workers, and that he has made his dislike of older workers in general, and black female older workers in particular, known as soon as he took over DPW.

**7.4.4.** On information and belief, the average age of employees in DPW has materially dropped from the time when Brian Lawrence took over until now.

**7.4.5.** Plaintiff Harris asserts that EEO Counselor Gail Heath also harbored animus towards older workers at DPW, and that Ms. Heath and Mr. Daniel Harrison worked together to attack, harm, discredit and remove older workers from DPW.

**7.4.6.** Plaintiff Harris asserts that she was given a false and inaccurate performance evaluation by Daniel Harrison because of her age, and in furtherance of his scheme to remove older female employees from DPW.

**7.4.7.** Plaintiff Harris asserts that Michael Carter's and Daniel Harrison's assessment of her work product was false, in total contrast with his assessment of her work in previous years, without basis in fact, and intentionally designed to place her employment in jeopardy.

**7.4.8.** Plaintiff Harris asserts that Daniel Harrison singled her out for undesirable assignments, and other unpleasant and/or onerous tasks because of her age.

**7.4.9.** Plaintiff Harris asserts that despite receiving an unfair performance evaluation, a three rating was still considered normal and acceptable performance and does not arise to a basis for demotion.

**7.4.10.**  Plaintiff Harris asserts that there was no legitimate business reason to remove her duties, given that DPW was understaffed at the time and that several employees were so overworked they voluntarily quit the Department.

**7.4.11.**  Plaintiff Harris asserts that her vast experience in special events, and long tenure with DPW makes her the marginalization illogical, and likely the result of unlawful age discrimination.

**7.4.12.**  Plaintiff Harris asserts that Daniel Harrison jeopardized her employment because she was an experienced and confident employee who would challenge and oppose his actions.

**7.4.13.**  Plaintiff Harris asserts that the removal of her duties and disciplinary actions were an unvarnished act of age discrimination in violation of the ADEA, and as a direct and proximate cause of her demotion, she has suffered lost wages, lost benefits, damage to her reputation, mental anguish, and emotional stress.

**7.4.14.**  Plaintiff Harris asks this Court to award her compensatory and equitable damages, front pay, back pay, interest, cost and fees, and attorney's fees of not less than $500,000.  She also asks this Court for a declaratory judgment ordering an equitable merit increase, and all other remedies the Court deems appropriate to make her whole.

**7.5. Violation of the DCHRA (Age Discrimination)**

**7.5.1.**  Plaintiff Harris references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**7.5.2.**  Plaintiff Harris reasserts all legal and factual predicates for her age discrimination claim under the ADEA as if fully restated herein.

**7.5.3.**   Plaintiff Harris asserts that the reprimand and termination of duties were an unvarnished act of age discrimination in violation of the DCHRA, and as a direct and proximate cause of her demotion, she has suffered lost wages, lost benefits, damage to her reputation, mental anguish, and emotional stress.

**7.5.4.**   Plaintiff Harris asks this Court to award her compensatory and equitable damages, front pay, back pay, interest, cost and fees, and attorney's fees of not less than $500,000.  She also asks this Court for declaratory judgment reinstating her to her job, and all other remedies the Court deems appropriate to make her whole.

## 7.6. Violation of DCWPA (Whistleblower Claim)

**7.6.1.**   Plaintiff Harris references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**7.6.2.**   As an employee, Plaintiff Harris was aware of allegations of misconduct, sexual assaults, and other criminal activity by employees.

**7.6.3.**   Shortly after Plaintiff Harris was denied promotional and training opportunities.

**7.6.4.**   Plaintiff Harris asserts that Daniel Harrison inserted himself into the disciplinary process to protect the male employees, and that the Director of DPW approved of Daniel Harrison's actions.

**7.6.5.**   Plaintiff asserts that her demotion was a violation of the DCWPA, designed to silence her.

**7.6.6.**   Plaintiff Harris asserts that the reprimand and removal of duties were an unvarnished violation of the DCWPA, and as a direct and proximate cause of her demotion, she has suffered lost wages, lost benefits, damage to her reputation, mental anguish, and emotional stress.

**7.6.7.**   Plaintiff Harris asks this Court to award her compensatory and equitable damages, front pay, back pay, interest, cost and fees, and attorney's fees of not less than $500,000.  She also asks this Court for declaratory judgment reinstating her to her job, and all other remedies the Court deems appropriate to make her whole.

## 7.7. Negligent Supervision

**7.7.1.**   Plaintiff Harris references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**7.7.2.**   On information and belief, numerous complaints against Daniel Harrison and DPW have been filed by Black female employees since his reign over older black women at DPW.

**7.7.3.**   Black female employees have complained about Daniel Harrison and Michael Carter for being both sexist and ageist, and for favoritism to male employees, both internally and to the DC Office of Human Rights, the EEOC, the Mayor's Office and the DC City Council.

**7.7.4.**   Specific and detailed allegations against Daniel Harrison have been filed by employees from every DPW division at a volume that placed Defendants on clear notice that there was a problem with him, yet there was no investigation, no relief, no apology and nor any action.

**7.7.5.**   On information and belief, several complaints against DPW have been filed with the District of Columbia Office of the Inspector General.  To date, the OIG has taken no action on any of these complaints.

**7.7.6.**   On information and belief, several members of the DPW chain of command have raised concerns about Daniel Harrison.  None of these concerns have been taken seriously or addressed.

**7.7.7.**   The Agency Director and The District of Columbia Government owes a duty of care to all DPW employees to ensure that they can maintain their employment free from discrimination or retaliation contrary to public policy.

**7.7.8.**   The Agency Director and the District of Columbia Government violated their duty to Plaintiff Harris by willfully ignoring the voluminous and diverse complaints against Daniel Harrison and Michael Carter and allowing them to remain in their positions.

**7.7.9.**   The Agency Director, Chris Shorter and the District of Columbia Government violated their duty to Plaintiff Harris by refusing to take seriously her and other's allegations against Daniel Harrison pertinent to his protection of an employee credibly accused of serious misconduct.

**7.7.10.**   Plaintiff Harris was directly harmed by the marginalization of her employment, promotion, and training opportunities, in violation of both federal and DC law and directly harmed by the negligence of the Agency Director Mayor Bowser in its failure to supervise Daniel Harrison more carefully and properly.

**7.7.11.**   Because the Agency Director and Mayor Bowser were placed on notice of the risk that Daniel Harrison posed to DPW and to the employees under his control, they could reasonably foresee the harm Daniel Harrison caused to Plaintiff.

**7.7.12.**   The harm that Plaintiff Harris suffered was predictable, and closely related to the other claims made against Daniel Harrison in the past.

**7.7.13.**  As a direct and proximate cause of the negligence of the Agency Director and Mayor Bower in supervising Daniel Harrison, Plaintiff suffered lost wages and benefits, damage to her reputation, and severe mental and emotional stress.  She now seeks compensation in an amount deemed appropriate by the Court, as well as training and promotional opportunities, and all other remedies the Court deems appropriate to make her whole.

## 8.   PLAINTIFF DARLENE MUNGIN'S CLAIMS

### 8.1. Violation of Title VII

**8.1.1.**  Plaintiff Mungin references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**8.1.2.**  Over the course of her tenure in DPW, Plaintiff Mungin observed, and asserts herein, that older black female employees are subjected to more frequent and more harsh discipline than their male counterparts for the same offenses.

**8.1.3.**  Plaintiff Mungin asserts, on information and belief, that older black female employees are subject to harsher discipline to a statistically significant degree, and that robust discovery on this issue will prove it.

**8.1.4.**  Plaintiff Mungin asserts that this disparity substantially increased during the tenure of Michael Carter.

**8.1.5.**  Plaintiff Mungin asserts that Michael Carter used his power and office to protect male employees he favors who get into trouble for misconduct, by inserting himself into the disciplinary process to mitigate or bypass discipline for them, while fabricating allegations and adversely harming older black female employees.

**8.1.6.**   Plaintiff Mungin asserts that she was systematically targeted for harassment, unfair treatment, disparate treatment, bullied, and inaccurately evaluated because of her age, race and gender, and in furtherance of Michael Carter's scheme to remove older Black women from DPW.

**8.1.7.**   Plaintiff Mungin asserts that Michael Carter terminated her for false and inaccurate reasons, and the incident caused her severe stress and mental anguish.

**8.1.8.**   Plaintiff Mungin asserts that this effort to attack her credibility, disparage her work and put her employment in jeopardy was motivated by gender animus because she is female.

**8.1.9.**   Plaintiff Mungin asserts she received the highest score for a promotion to Associate Administrator.  Instead, Michael Carter selected his friend Raymond Haynesworth, a black male, for the position.

**8.1.10.**   Plaintiff Mungin asserts that Michael Carter advised Plaintiff Mungin not to make a fuss about not getting the position for which she scored the highest and to wait for the next position at FMA as DPW's Deputy Administrator for Business Operations.

**8.1.11.**   Plaintiff Mungin asserts that when the next position came available, Michael Carter hired a white male.

**8.1.12.**   Plaintiff Mungin asserts that her superiors singled her out for undesirable assignments, over-burdened her with work, and denied her training and development opportunities because of her gender.

**8.1.13.**  Plaintiff Mungin asserts that Michael Carter fostered and encouraged a workplace that was rife with sexist, ageist, and off-color comments, that in the aggregate created a hostile work environment for older female workers.

**8.1.14.**  When Plaintiff Mungin attempted to speak to her superiors about the hostile work environment she was enduring, and her concerns about gender disparities in the frequency and severity of discipline of male employees as compared to female employees, she was rebuffed, ignored, dismissed, and retaliated against.

**8.1.15.**  Plaintiff Mungin asserts that once she filed an EEO complaint about the hostile work environment in January of 2020, she became the target of a coordinated effort to push her out of DPW, and that this scheme was orchestrated and directed by Michael Carter.

**8.1.16.**  Plaintiff Mungin asserts that Michael Carter and DPW were non-cooperative with the EEOC counselor.

**8.1.17.**  Plaintiff Mungin was falsely accused of insubordination and terminated on Valentine's Day of 2020.

**8.1.18.**  Plaintiff Mungin asserts that the cumulative effect of the harassment, hostile work environment and retaliation she endured at DPW caused her severe mental stress and anxiety and emotional suffering and caused damage to her reputation.

**8.1.19.**  Plaintiff Mungin asserts that she was unfairly targeted for harassment for the express purpose of moving her out of DPW because Michael Carter harbored animus towards older Black female employees.

**8.1.20.**  Plaintiff Mungin now seeks compensatory damages, as well as damages for her emotional and mental anguish, and damage to her reputation of not less than

$1,000,000, and all other remedies, including the right to reinstatement to DPW, as the Court deems appropriate to make her whole.

## 8.2. Violation of the DCHRA (Gender Discrimination)

**8.2.1.**   Plaintiff Mungin references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**8.2.2.**   Plaintiff Mungin reasserts all legal and factual predicates for her race discrimination claim under Title VII as if fully restated herein.

**8.2.3.**   Plaintiff Mungin asserts that she was the victim and target of a scheme to move her out of DPW based on her age, race and gender, in violation of the DCHRA, and as a direct and proximate cause of the hostile work environment and retaliation she endured, she has suffered severe mental anguish and emotional stress.

**8.2.4.**   Plaintiff Mungin now seeks compensatory damages, as well as damages for her emotional and mental anguish, and damage to her reputation of not less than $1,000,000, and all other remedies, including the right to reinstatement to DPW, as the Court deems appropriate to make her whole.

## 8.3. Violation of 42 U.S.C. Section 1981, Enforced by Section 1983

**8.3.1.**   Plaintiff Mungin references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**8.3.2.**   Plaintiff Mungin reasserts all legal and factual predicates for her gender and age discrimination claims under Title VII as if fully restated herein.

**8.3.3.**   Plaintiff Mungin further asserts that Michael Carter's open hostility toward older Black female employees encumbered her ability to maintain and enjoy fair employment, and unlawfully forced her out of DPW.

**8.3.4.**   Plaintiff Mungin asserts that the hostile work environment and retaliation she endured in DPW were endemic of race, age, and gender discrimination in violation of 42 U.S.C. § 1981, and as a direct and proximate cause of such discrimination, she has suffered damage to her reputation, and severe mental anguish and emotional stress.

**8.3.5.**   Plaintiff seeks to enforce her rights under 42 U.S.C. § 1981, by asserting the instant claim under 42 U.S.C. § 1983.

**8.3.6.**   Plaintiff Mungin now seeks compensatory damages, as well as damages for her emotional and mental anguish, and damage to her reputation of not less than $1,000,000, and all other remedies, including the right to reinstatement to DPW, as the Court deems appropriate to make her whole.

## 8.4. Violation of the ADEA (Age Discrimination)

**8.4.1.**   Plaintiff Mungin references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**8.4.2.**   Plaintiff Mungin asserts that Michael Carter harbored a peculiar and particular animus toward older female workers.

**8.4.3.**   On information and belief, the median age of DPW employees has dropped from 2018, when Michael Carter took over, by approximately fifteen (15) years.

**8.4.4.**   Plaintiff Mungin asserts that she was targeted for removal from DPW in part because of her age, and in furtherance of Michael Carter's scheme to remove older employees from DPW.

**8.4.5.**   Plaintiff Mungin asserts that when Michael Carter falsely accused her of insubordination, marginalized her, prevented her from being promoted even when

she had the highest score and denigrated her based on age, her complaints about it were ignored and dismissed, and the records related to the incident were destroyed, in contravention of DPW policy.

**8.4.6.**   Plaintiff Mungin asserts that she was singled out to be terminated, as part of a scheme to move her out of DPW, in part because of her age.

**8.4.7.**   Plaintiff Mungin asserts that there was no legitimate business reason to move her out of DPW because it was understaffed at the time, and that the coordinated scheme to do so was motivated in part by her age.  Indeed, Plaintiff Mungin's team had the highest performance measures for 3 years, over the entire FMA agency.

**8.4.8.**   Plaintiff Mungin asserts that Michael Carter moved her out of DPW because she was an experienced and confident employee who could challenge and oppose his actions.

**8.4.9.**   Plaintiff Mungin asserts that the way she was treated constitutes age discrimination in violation of the ADEA, and as a direct and proximate cause of the discrimination, hostile work environment and retaliation she endured, she suffered severe mental anguish and emotional stress, and damage to her character and reputation.

**8.4.10.**   Plaintiff Mungin now seeks compensatory damages, as well as damages for her emotional and mental anguish, and damage to her reputation of not less than $350,000, and all other remedies, including the right to reinstatement to DPW, as the Court deems appropriate to make her whole.

**8.5. Violation of the DCHRA (Age Discrimination)**

**8.5.1.**   Plaintiff Mungin references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**8.5.2.**   Plaintiff Mungin reasserts all legal and factual predicates for her age discrimination claim under the ADEA as if fully restated herein.

**8.5.3.**   Plaintiff Mungin asserts that the way she was treated constitutes age discrimination in violation of the DCHRA, and as a direct and proximate cause of the discrimination, hostile work environment and retaliation she endured, she suffered severe mental anguish, emotional stress, and damage to her character and reputation.

**8.5.4.**   Plaintiff Mungin now seeks compensatory damages, as well as damages for her emotional and mental anguish, and damage to her reputation of not less than $350,000, and all other remedies, including the right to reinstatement to DPW, as the Court deems appropriate to make her whole.

**8.6. Violation of DCWPA (Whistleblower Claim)**

**8.6.1.**   Plaintiff Mungin references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**8.6.2.**   Plaintiff Mungin engaged in protected activity when she reported age, race and gender discrimination, hostile work environment, favoritism towards male employees.

**8.6.3.**   Plaintiff Mungin was targeted for retaliation by Michael Carter and his subordinates because she engaged in protected activity.

**8.6.4.**   The retaliation Plaintiff Jordan endured is outlined in the previous paragraphs and is fully incorporated herein.

**8.6.5.**   Plaintiff Mungin asserts that she was targeted for discrimination and retaliation in part because she was speaking out about the favoritism and improper actions of Michael Carter, who was inserting himself into cases to protect male employees.

**8.6.6.**   Plaintiff Mungin asserts that Michael Carter's scheme to remove her from DPW was an unvarnished violation of the DCWPA, and as a direct and proximate cause of it, she has suffered severe mental anguish, emotional stress, and substantial damage to her character and reputation.

**8.6.7.**   Plaintiff Mungin now seeks compensatory damages, as well as damages for her emotional and mental anguish, and damage to her reputation, and all other remedies, including the right to reinstatement, as the Court deems appropriate to make her whole.

**8.7. Negligent Supervision – Common Law Claim**

**8.7.1.**   Plaintiff Mungin references and fully incorporates the allegations in the previous paragraphs as if fully restated herein.

**8.7.2.**   On information and belief, no less than ten (10) complaints against Michael Carter have been filed by older Black female employees since the time he was first employed at DPW.

**8.7.3.**   Older black female employees have complained about Michael Carter for being both ageist and sexist, and for favoritism to male employees both internally, and to the DC Office of Human Rights, the EEOC, the Mayor's Office and the DC City Council.

**8.7.4.**   Specific and detailed allegations against Daniel Harrison have been filed by employees from every DPW division, at a volume that placed Defendants on clear notice that there was a problem with him.

**8.7.5.**   On information and belief, several complaints against Michael Carter have been filed with the District of Columbia Office of the Inspector General. To date, the OIG has taken no action on any of these claims.

**8.7.6.**   The DPW and Mayor Bowser owe a duty of care to all DPW employees to ensure that they can maintain their employment free from discrimination or retaliation contrary to public policy.

**8.7.7.**   The DPW and Mayor Bowser violated their duty to Plaintiff Mungin by willfully ignoring the voluminous and diverse complaints against Michael Carter and allowing him to remain in his position.

**8.7.8.**   Plaintiff Mungin has been directly harmed by the actions of Michael Carter terminating her, in violation of both federal and DC law, and thus has been directly harmed by the negligence of the DPW and Mayor Bowser, in not carefully and properly supervising Michael Carter.

**8.7.9.**   The harm that Plaintiff Mungin has suffered because of Michael Carter's action was easily foreseeable because the DPW Director and Mayor Bowser were placed on notice of the risk that Michael Carter posed to the DPW and to the employees under his control.

**8.7.10.**   The harm that Plaintiff Mungin suffered was of the kind and nature that was predictable, and closely related to the other claims made against Michael Carter in the past.

**8.7.11.** As a direct and proximate cause of the negligence of the DPW and Mayor Bower in supervising Michael Carter, Plaintiff has suffered severe mental and emotional stress, and substantial damage to her character and reputation. She now seeks compensation in an amount deemed appropriate by the Court, as well as reinstatement to her previous position, and all other remedies the Court deems appropriate to make her whole.

## JURY DEMAND

9.  Plaintiffs demand a trial by jury on all issues so triable.


Respectfully submitted,

Charles E. Walton, Esq.
*Attorney for Plaintiffs*

Charles E. Walton, Esq. - #474873
10905 Fort Washington Road, Suite 201
Fort Washington, MD  20744
301-292-8357 office
301-292-9439 fax
cwalton@cwaltonlaw.com
Attorney for the Employee