UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NALENE RUFFIN**, *et al.*,<br><br>**Plaintiffs,**<br><br>v.<br><br>**DISTRICT OF COLUMBIA**, *et al.*,<br><br>**Defendants.** | Civil Action No. 22-2341 (JEB) |

**MEMORANDUM OPINION**

Plaintiffs Nalene Ruffin, Irene Jordan, Demetria Harris, and Darlene Mungin are all current or former employees of the District of Columbia Department of Public Works. Together, they bring a litany of claims against the District, alleging discrimination by their employer on the basis of race, age, and sex. According to them, supervisors at DPW engaged in a coordinated effort to remove middle-aged Black women from the Department through harassment, disparate treatment, and unfair evaluations of their work performance. Defendants now move to dismiss, arguing that various of Plaintiffs' claims are untimely, unexhausted, or unsubstantiated. The Court will grant the Motion for the most part.

**I.     Background**

The Court draws the following facts from the operative Complaint and accepts them as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). As additional facts relevant to Plaintiffs' specific claims are discussed later in this Opinion, the Court provides here only an overview of each Plaintiff's employment with DPW and her allegations of discrimination by its management.

Plaintiffs collectively describe themselves as "experienced staff who vocally opposed what they perceived to be DPW management, bias, and preferential treatment in favor of male

1

and younger colleagues." ECF No. 9-1 (Amend. Compl.), ¶ 1.1. Specifically, they allege that former (and now deceased) DPW Deputy Director for Fleet Management and Administration Daniel Harrison and current Interim DPW Director Michael Carter harbored "ageist and sexist attitudes" and that the two "used their power to discriminate, marginalize, displace, harass, and harm the Plaintiffs," based on their age, race, and sex, "by culling out middle-aged Black women from DPW [while simultaneously] manipulating its investigative process to protect male employees accused of misconduct." Id. These issues of discrimination, they contend, permeated "every DPW division, at a volume that placed Defendants on clear notice that there was a problem, . . . yet nothing was done to protect older female workers" from the alleged discrimination and bias they experienced. Id.

Each Plaintiff is a Black woman over the age of 40 and brings to the Complaint her own accusations of discrimination and bias on the part of DPW and its management. Plaintiff Ruffin, for example, currently serves as a heavy-mobile-equipment mechanic at DPW, where she has worked for the past five years. Id., ¶ 2.1–2.1.2. She alleges that she was written up for pretextual reasons, transferred to an alternate and more physically demanding position, and replaced in her previous role by a male colleague who was unable to adequately complete the responsibilities of that position. Id., ¶ 2.1.11–2.1.13. During a mediation between the Agency and Ruffin's union, all of her supervisors with the exception of Daniel Harrison found that she had executed her previous job properly and she was eventually returned to her old position. Id., ¶ 2.1.15.

Plaintiff Jordan was, prior to her termination, the Director of Maintenance and Repair Manager at DPW. Id., ¶ 2.2.1–2.2.3. She alleges that, beginning in September 2019, former Deputy Director Harrison began discriminating against her by excluding her from meetings for

managers and supervisors, giving her low performance-appraisal scores, and, eventually, terminating her. Id., ¶ 2.2.4–2.2.16. She claims that, while other male employees were given the benefit of being placed on a performance-improvement plan prior to receiving low ratings or reprimands, this courtesy was not extended to her or any of the other female supervisors at DPW. Id., ¶ 2.2.6. She also recalls that, after Jordan engaged the Agency's EEOC counselor about her concerns, Harrison told a group of employees at a meeting that "Ms. Jordan was putting the EEOC on him." Id., ¶¶ 2.2.8, 2.2.10. Jordan was eventually placed on an abbreviated 30-day PIP and terminated four weeks later. Id., ¶ 2.2.15–2.2.16.

Plaintiff Harris is currently a Special Events Coordinator at DPW. Id., ¶ 2.3. In addition to alleging similar discriminatory acts as the previous Plaintiffs — such as being excluded from meetings, having her duties reassigned, and receiving low performance appraisals — Harris also alleges being subject to sexual harassment in the workplace. Id., ¶ 2.3.2. On multiple occasions, she describes receiving explicit photos sent to her government email address, see id., ¶ 2.3.5, 2.3.10, which she reported to DPW, and she requested that her phone number and email address be changed — all to no avail. See id., ¶ 2.3.11. On another occasion, Harris details receiving repeated harassing advances from a male colleague — Joshua Tucker — which she also reported to her supervisors. See id., ¶ 2.3.6. Despite her reports, she was still assigned to work directly with Tucker and continued receiving inappropriate advances. Id., ¶¶ 2.3.7–2.3.8. DCHR later terminated Tucker, but DPW did not respond to Harrison's complaints. Id., ¶ 2.3.9.

Finally, Plaintiff Mungin was a Fleet Advisory Service Manager for DPW prior to her termination in February 2020. Id., ¶ 2.4.3. Mungin was fired for insubordination after she enrolled in a Mayor's Executive Leadership Program at George Washington University. Id., ¶¶ 2.4.1, 2.4.3. This was despite her allegedly receiving the permission of her supervisors,

including Deputy Director Carter, to enroll in such program and disenrolling once she was ordered to do so. Id., ¶¶ 2.4.4, 2.4.6. As a result, she argues that her termination was without basis and discriminatory. Id., ¶¶ 2.4.3–2.4.6.

Each Plaintiff filed a discrimination complaint with the D.C. Office of Human Rights addressing the conduct they experienced, see id., ¶¶ 2.1.18, 2.2.18, 2.3.18, 2.4.7, and they allege that "[o]lder black female employees" routinely complained about the discriminatory attitudes of Harrison and Carter both internally and to the D.C. OHR, the EEOC, the Mayor's Office, and to the D.C. City Council. See id., ¶¶ 2.1.48, 2.4.41. Plaintiffs then filed this suit in August 2022. The operative Complaint alleges six counts of discrimination, retaliation, and hostile work environment based on age, race, and sex in violation of Title VII (Count I), the D.C. Human Rights Act (Counts II and V), 42 U.S.C. § 1981 (Count III), the Age Discrimination in Employment Act (Count IV), and the D.C. Whistleblower Protection Act (Count VI). It last alleges the common-law tort of negligent supervision (Count VII). See id., ¶¶ 5–8. Plaintiff Jordan alone additionally raises a claim for wrongful termination (Count VIII). Id., ¶ 6.7. Defendants now move to dismiss. See ECF No. 12 (MTD).

**II.      Legal Standard**

Defendants first argue that this Court should dismiss the majority of Plaintiffs' claims for failure "to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6)

motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

For Plaintiffs' DCHRA claims, Defendants argue that this Court lacks subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A plaintiff bears the burden of proving that a court has subject-matter jurisdiction to hear her claims. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1350 (2d ed. 1987)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), a court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharms., Inc. v. Fed. Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

**III.     Analysis**

Defendants raise numerous arguments in their Motion to Dismiss, including that Plaintiffs failed to properly exhaust their claims on some counts and failed to state a valid claim for relief on others. On Counts II, IV, V, VII, and VIII, Plaintiffs largely concede that Defendants' position mandates dismissal. After detailing such concessions, the Court will move on to the remaining claims in Counts I, III, and VI.

   A.   Arguments Conceded by Plaintiffs

The Court begins with Plaintiffs' DCHRA claims for age and sex discrimination in Counts II and V. That statute was enacted "to secure an end . . . to discrimination for any reason other than that of individual merit, including . . . discrimination by reason of . . . disability." D.C. Code § 2–1401.01. It provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint [with the D.C. OHR]." Id. § 1403.16(a) (emphasis added). "Individuals alleging violations of the DCHRA are thus offered two possible paths to redress: they may file a complaint either in court or with OHR." Elzeneiny v. District of Columbia, 125 F. Supp. 3d 18, 32 (D.D.C. 2015) (citing D.C. Code §§ 2–1403.16(a), 1403.03(b)). "In general, they cannot do both." Id. (citing Carter v. District of Columbia, 980 A.2d 1217, 1223 (D.C. 2009)). Once an individual files a complaint with OHR, she may file an independent suit only in two narrow instances: if OHR dismissed the case on administrative-convenience grounds or if the individual withdrew her OHR complaint before a probable-cause determination was rendered. See id. (citing Jones v. District of Columbia, 41 F. Supp. 3d 74, 79 (D.D.C. 2014)).

Defendants argue that, because Plaintiffs have filed their complaints with OHR and because they have not alleged that either of the two narrow exceptions applies, those claims must be dismissed. Plaintiffs concede that they each have pending complaints before OHR, and they do not argue that either of these exceptions applies. See ECF No. 13-1 (Opp.) at 2–3; Amend. Compl., ¶¶ 2.1.18, 2.2.18, 2.3.18, 2.4.7. They nonetheless attempt to portray their filing of this suit as "in effect withdraw[ing]" their filed complaints with OHR, but they offer no evidence that they have in fact withdrawn those complaints. See Opp. at 3. Given the pendency of those complaints before OHR, Plaintiffs cannot seek relief under the DCHRA in this Court, and Counts II and V must therefore be dismissed.

As to Plaintiffs' ADEA claim in Count IV, Defendants contend that Plaintiffs (with the exception of Harris) have not shown that they have administratively exhausted their remedies. It is axiomatic that federal employees may file an ADEA action in federal court only after doing so. Huang v. Wheeler, 215 F. Supp. 3d 100, 111 (D.D.C. 2016) (citing 29 U.S.C. § 633a(b)–(d)). "[E]xhaustion requirements, however, are not jurisdictional" in an ADEA case, and the burden of pleading and proving insufficient exhaustion thus falls on the defendant. Id. at 111 (citing Artis v. Bernanke, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997)). In response to Defendants' Motion, however, Plaintiffs Ruffin, Jordan, and Mungin never allege that they have satisfied the ADEA's administrative-exhaustion requirement. Only Plaintiff Harris attaches to the Amended Complaint an administrative charge of age discrimination dated more than 60 days before this suit was filed. See Amend. Compl., Exh. C (Harris ADEA Charge) at 89–90. As Plaintiffs' Opposition does not address ADEA exhaustion on behalf of the others, they have conceded this argument as well, and Count IV

should be dismissed with respect to those Plaintiffs.  See ECF No. 14 (Reply) at 2; see generally Opp.

Moving to the common-law claims of negligent supervision and wrongful termination in Counts VII and VIII, Defendants maintain that Plaintiffs have failed to satisfy the statutory-notice requirements of D.C. Code § 12-309.  That provision obliges a person bringing a claim (like this one) for unliquidated damages against the District to, "within six months after the injury[,] . . . give[ ] notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage."  No Plaintiff, however, alleges compliance with this provision, and their Opposition neglects entirely to address the issue.  See Reply at 2.  These two counts thus also fall by the board.

Finally, Defendants ask this Court to dismiss Mayor Bowser and Interim Director Carter as improper parties to this suit.  "It is the 'overwhelming approach' in this district to summarily dismiss 'government officials sued in their official capacities in conjunction with suits also filed against the municipality.'"  York v. Karbah, No. 20-3669, 2021 WL 5998390, at *7 (D.D.C. Dec. 19, 2021) (citing Price v. District of Columbia, 545 F. Supp. 2d 89, 94 (D.D.C. 2008) (collecting cases)); see also Mack v. Aspen of DC, Inc., 248 F. Supp. 3d 215, 218 (D.D.C. 2017) (noting that no need exists for official-capacity actions against local officials when local government units may be sued directly) (citing Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)).  Plaintiffs do not include any allegations in their Complaint that Bowser or Carter acted in anything other than their official capacities with regard to the claims in this suit, nor do they address this issue in their Opposition.  See Reply at 3.  As a result, the case will proceed against the city alone.

B.  Remaining Claims

That leaves only Counts I, III, and VI.  The Court will address each in turn.

1.  *Title VII*

The District first argues that Plaintiffs have failed to exhaust their Title VII claims in Count I.  Before filing suit, a federal employee alleging a Title VII violation must timely exhaust her administrative remedies or be barred from judicial relief.  See Harris v. Gonzales, 488 F.3d 442, 443 (D.C. Cir. 2007); Hill v. Kempthorne, 577 F. Supp. 2d 58, 64 (D.D.C. 2008).  To satisfy this requirement, a prospective plaintiff must file an administrative charge with the EEOC or equivalent state or local agency — here, OHR.  See Wiley v. Johnson, 436 F. Supp. 2d 91, 95 (D.D.C. 2006) (citing Moore v. Jewel Food Stores, 1998 WL 102639, at *4 (N.D. Ill. Mar.3, 1998)).  Once such a charge has been filed, the claimant must show that the "EEOC has notified [her] of its decision to dismiss or its inability to bring a civil action within the requisite time period . . . ."  Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995).  This notice comes in the form of a right-to-sue letter, which gives the claimant 90 days to file her suit.  See 42 U.S.C. § 2000e-5(f)(1); see also 29 C.F.R. § 1601.28.

Here, Plaintiffs do report filing a charge of discrimination with the D.C. OHR.  See Amend. Compl., Exhs. A (Ruffin Charge), B (Jordan Charge), C (Harris Charge), D (Mungin Charge).  None, however, alleges that she has received a right-to-sue letter from the EEOC.  Plaintiffs do not exactly make clear where their complaint is within the OHR process, whether they have followed up with OHR, or, given the inaction by OHR that they allege, whether they filed their charge with the EEOC.  Regardless of how OHR has proceeded, Plaintiffs have not satisfied Title VII's exhaustion requirement.  Count I must therefore be dismissed as unexhausted.

### 2. *Municipal Liability for Violations of Section 1983*

Turning to the § 1981 claim in Count III, which alleges intentional discrimination based on race, the District argues that it cannot be held liable as a municipality.

Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." Jett v. Dallas Indep. School Dist., 491 U.S. 701, 735 (1989). A municipality "cannot be held liable [under section 1983] solely because it employs a tortfeasor." Singletary v. District of Columbia, 766 F.3d 66, 72 (D.C. Cir. 2014) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis omitted)). Liability for the constitutional violations of its employees arises only "when execution of [the municipality's] policy or custom . . . inflicts the injury." Id. (quoting Monell, 436 U.S. at 694). The plaintiff bears the burden of pleading the existence of a municipal custom or practice that abridges her federal constitutional or statutory rights. See Bonaccorsy v. District of Columbia, 685 F. Supp. 2d 18, 26 (D.D.C. 2010). To proceed against the District, Plaintiffs must, therefore, demonstrate not only that DPW violated their constitutional rights, but also that it was, in fact, a District policy or custom to do so. See Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (describing "two-step inquiry"); see also Triplett v. District of Columbia, 108 F.3d 1450, 1453 (D.C. Cir. 1997) (to establish Monell liability, "plaintiff must 'show fault on the part of the city based on a course its policymakers consciously chose to pursue'") (quoting Carter v. District of Columbia, 795 F.2d 116, 122 (D.C. Cir. 1986)).

In order to attribute a particular constitutional violation to a municipality, a plaintiff must demonstrate that the policy that led to the violation arose in one of four ways: (1) from "the explicit setting of a policy by the government"; (2) from "the action of a policy maker within the government"; (3) from "the adoption through a knowing failure to act by a policy maker of

10

actions by his subordinates that are so consistent they have become 'custom'"; or (4) from "the failure of the government to respond to a need . . . in such a manner as to show 'deliberate indifference' to the risk . . . [of] constitutional violation[ ]." Baker, 326 F.3d at 1306 (citations omitted).

      Plaintiffs here do not accuse the District of enacting an explicit policy of discrimination, nor do they allege that any of the alleged discrimination was the result of an action by a policymaker within the government. Although they do not make clear precisely which theory of liability they are proceeding under, Plaintiffs claim that the male-dominated culture at DPW led to a "longstanding practice, custom, and policy of discrimination to violate the rights of older African American women" at the agency, that these practices became the "standard operating procedure" at DPW, and that DPW supervisors showed deliberate indifference to the risks for constitutional violations arising from that culture. See Opp. at 4. They further allege that the "median age of DPW employees has dropped from 2018, when Michael Carter took over, by approximately fifteen (15) years," Amend. Compl., ¶ 2.4.30, and that female employees at DPW are "subject to harsher discipline to a statistically significant degree." Id., ¶ 5.1.3.

      Although the issue is a close one, Plaintiffs appear to narrowly make it over the bar at this stage. While the District is correct that they cannot support a custom- or deliberate-indifference-based theory of Monell liability by merely reciting "legal conclusions cast in the form of factual allegations," Kaemmerling v. Lappin, 553 F.3d 669, 677 (D.C. Cir. 2008) (quoting Henthorn v. Dep't of Navy, 29 F.3d 682 (D.C. Cir. 1994)), or with allegations of statistically significant mistreatment of Black women at DPW without supporting evidence, Plaintiffs here do more than that. They first reiterate their individual claims of discrimination. See Opp. at 3–6. Deliberate indifference exists when "'the municipality knew or should have known of the risk of

constitutional violations,' but did not act." Warren, 353 F.3d at 39 (quoting Baker, 326 F.3d at 1307). This standard "simply means that, [when] faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction." Hurd v. District of Columbia, 997 F.3d 332, 339 (D.C. Cir. 2021) (citations and internal quotation marks omitted). Here, each Plaintiff complains of a similar set of discriminatory actions — i.e., being excluded from meetings, being transferred out of their positions in favor of less qualified male employees, and receiving low performance evaluations or being terminated — all of which happened in a narrow period of a few years at DPW (between June 2018 and February 2020). See Opp. at 3–6; MTD at 4 n.7. The incidents Plaintiffs complain of also all concern behavior by the same supervisors, Daniel Harrison and Michael Carter. See Amend. Compl., ¶¶ 2.2.24, 2.3.24, 2.4.4. The cumulative effect of these facts when paired with Plaintiffs' allegations that other employees routinely complained about the behavior of these men, see id., ¶¶ 2.1.48, 2.4.41, both internally and externally, suggest that DPW should have "known of the risk of constitutional violations" from their failure to act on Harris's complaints. Baker, 326 F.3d at 1307.

Additionally, at least one of the instances of misconduct alleged — the accumulation of Plaintiff Harris's reports of sexual harassment from a male employee and her repeated receipt of sexually explicit material on her work email and phone — was particularly egregious and, when paired with DPW's failure to respond, may rise to the level of a "sufficiently serious and obvious" example of misconduct that calls into question the agency's policies. See Atchinson v. District of Columbia, 73 F.3d 418, 422 (1996) (noting in context of Monell failure-to-train claim that it is "possible for a section 1983 plaintiff to satisfy Rule 8 by alleging . . . an unusually serious instance of misconduct"); see also Milligan v. City of Newport News, 743 F.2d 227, 230

(4th Cir. 1984) ("[A] municipality's 'policy' of inaction . . . must be of such a character that municipal employees could reasonably infer from it tacit approval of the conduct in issue.").

Count III therefore survives for now.

###   3.   DCWPA

Finally, the District contends that Plaintiffs' DCWPA claims (Count VI) fall outside the applicable statute of limitations. A DCWPA action is timely if it is instituted "within 3 years after a violation occurs or within one year after the employee first becomes aware of the violation, whichever occurs first." D.C. Code § 1-615.54(a)(2). As the District points out, "All wrongful conduct Plaintiffs collectively allege occurred in or before November 2020," and they did not file suit until August 9, 2022. See MTD at 9; Amend. Compl., ¶¶ 2.1, 2.2, 2.3, 2.4, 5.6, 6.6, 7.6, 8.6. Because these are all acts the Plaintiffs were contemporaneously aware of (and Plaintiffs do not contend otherwise), the one-year statute of limitations applies and thus bars their claims.

Rather than contest this, Plaintiffs simply argue that the statute of limitations was tolled when they filed their discrimination complaints with OHR. See Opp. at 2–3. The DCWPA, however, includes no such tolling provision (nor any provision providing for the filing of DCWPA claims with OHR). Plaintiffs' only support for this proposition comes in the form of a citation to a D.C. Court of Appeals decision concerning a claim for national-origin discrimination under the DCHRA, which included no discussion of the DCWPA. See Opp. at 3; Estenos v. PAHO/WHO Federal Credit Union, 952 A.2d 878, 885 (D.C. 2008) (citing D.C. Code § 2-1403.16(a), the DCHRA tolling provision). As a result, Count VI must be dismissed as to all Plaintiffs.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss in large part. All that remains is Count III (all Plaintiffs) and Count IV (Harris only), and the only Defendant remaining is the District of Columbia. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: March 17, 2023